UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

TOURSEAN PRESSLEY,

        Plaintiff,

v.

SARAH SCHROEDER et al.,

        Defendants.
_____/

Case No. 2:25-cv-248

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.**    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events

about which he complains occurred at that facility. Plaintiff sues the following MBP personnel in their personal capacities: Warden Sarah Schroeder, Business Manager Robin McCarthy, Accounting Technician B. Misale, and CSS-1 A. Nachtman.

Plaintiff alleges that on July 3, 2025, Defendant Nachtman came to Plaintiff's cell with some legal mail that required special handling. (Compl., ECF No. 1, PageID.3.) When the mail was opened, Defendant Nachtman "discovered a cashier[s] check from [Plaintiff's] lawyer." (*Id.*) Defendant Nachtman told Plaintiff that, per policy, he would have to issue a contraband removal with a Notice of Intent "pending a hearing to determine what will be done with the check." (*Id.*) Plaintiff claims, however, that Defendant Nachtman gave him the contraband removal slip, but "failed to include the Notice of Intent form . . . which deprived [Plaintiff] of [his] hearing[,] which is a clear violation of policy." (*Id.*)

On July 8, 2025, Plaintiff received a GTL money receipt indicating that the facility business office, operated by Defendants McCarthy and Misale, had deposited the check into Plaintiff's inmate trust account on July 7, 2025. (*Id.*) Plaintiff submitted a grievance. (*Id.*) In response, Defendants McCarthy and Misale stated that they were "ordered by a non[] facility personnel that has no authority to override the chain of command nor proper procedures of the facility to deposit the check into [Plaintiff's] account." (*Id.*)

On July 12, 2025, Defendant Schroeder denied Plaintiff's disbursement request to send the money home "[due] to the fact that she was ordered by the attorney general to freeze [Plaintiff's] account." (*Id.*) On July 18, 2025, Defendant Schroeder gave Plaintiff the denied disbursement request, as well as a summons from the Attorney General's office. (*Id.*) Plaintiff also claims that Defendant Schroeder was the "respondent to [his] Step 2 grievance and still fail[ed] to render corrective actions." (*Id.*)

Plaintiff claims that throughout this process, he "had no say so over what was done with [the] check . . . nor was [he given] a[n] administrative hearing to determine the appropriate disposition of the said check." (*Id.*) According to Plaintiff, "[t]hese violations were the sole cause of 90% of [the] check . . . being seized." (*Id.*)

Based upon the foregoing, the Court construes Plaintiff's complaint to assert Fourteenth Amendment due process claims premised upon both the handling and ultimate seizure of the majority of the check, as well as constitutional claims regarding the handling of his grievance. Plaintiff seeks $200,000.00 in compensatory damages, as well as $70,000.00 in punitive damages. (*Id.*, PageID.4.)

**II.      Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

3

relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Fourteenth Amendment Due Process Claims

The Court has construed Plaintiff's complaint to assert Fourteenth Amendment due process claims premised upon the fact that the cashier's check was deposited in Plaintiff's inmate trust account and, according to Plaintiff, 90% of the amount of that check was seized because the Attorney General allegedly ordered that Plaintiff's account be frozen. Plaintiff faults Defendants for failing to follow MDOC policy and procedure, including the provision of an administrative hearing, before deciding upon the ultimate disposition of the check.

The United States Court of Appeals for the Sixth Circuit has held that "inmates do have a protected property interest in their money." *See Bailey v. Carter*, 15 F. App'x 245, 251 (6th Cir. 2001) (citing *Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6th Cir. 1997)). Thus, because Plaintiff alleges that the cashier's check was deposited to his inmate trust account and that his account was frozen and about 90% of the funds from that check were seized, arguably Plaintiff is suffering a deprivation of his property. However, for the following reasons, Plaintiff cannot prevail on his due process claims.

Plaintiff alleges that Defendants did not comply with MDOC policies and procedures in their handling of the cashier's check. In light of those allegations, Plaintiff's due process claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act of a state employee," *id.* at 541, including "the unauthorized failure of agents of the State to follow established state procedure," *id.* at 543, has "not alleged a violation of the Due Process Clause of the Fourteenth Amendment," *id.*, where "[t]he [s]tate provides a remedy to persons who believe they have suffered a tortious loss at the hands of the [s]tate," *id.*, and the state "remedies provided could have fully compensated the [plaintiff] for the . . . loss he suffered . . . they [can be] sufficient to satisfy the requirements of due process," *id.* at 544.

Where the state provides such a post-deprivation remedy, the plaintiff must plead and prove the inadequacy of the remedy. *See Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (explaining that "a procedural due process claim will not be stated unless the plaintiff pleads and proves that his available state remedies are inadequate to redress the wrong"). Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, state post-deprivation remedies are available to him. Michigan law authorizes actions in the Court of Claims asserting "any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or officers." *See* Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has held that Michigan provides adequate post-deprivation remedies for deprivation of liberty or property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivations he suffered, either negligent or intentional, of his funds.

For all of these reasons, Plaintiff's Fourteenth Amendment due process claims premised upon the handling of the cashier's check fail to state a claim upon which relief may be granted.[1]

### B.     Claims Regarding Handling of Grievances

The Court has also construed Plaintiff's complaint to assert constitutional claims regarding the handling of his grievance against Defendants Schroeder, Nachtman, and Misale.

Plaintiff has no due process right to file a prison grievance. The courts have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the alleged conduct by these Defendants could not have deprived Plaintiff of due process.

Additionally, Plaintiff's right to petition the government is not violated by any failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for*

---

[1] Furthermore, to the extent Plaintiff alleges that Defendants failed to follow state procedure, he fails to state a cognizable federal claim. Courts have repeatedly recognized that a prisoner does not enjoy a federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007).

*Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, any actions by these Defendants related to Plaintiff's grievances have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977), *overruled in other part by Lewis v. Casey*, 518 U.S. 343 (1996). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

7

Accordingly, for each of the foregoing reasons, the Court will dismiss Plaintiff's claims regarding his use of the grievance process.

## **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

A judgment consistent with this opinion will be entered.

Dated:   November 5, 2025              /s/ Jane M. Beckering
                                       Jane M. Beckering
                                       United States District Judge